BARNETT V. CHICAGO AND LAKE HURON RAILROAD COMPANY.

*Jurisdiction — of foreign corporation acquired by service on an officer thereof in this State. Constitutional law — legislature may prescribe form of action.*

Under the common law, jurisdiction of a foreign corporation could not be acquired by the service of process upon an officer thereof in this State. Under the Code, however, jurisdiction may be acquired by personal service on the proper officer, and such service is equivalent to personal service on a non-resident natural person. An attachment against property is not required to be issued.

It is within the power of the legislature to authorize a suit against a foreign corporation *in personam,* and such power is not limited to the allowance of actions *in rem* only. There is nothing constitutional or fundamental in the method of procedure in an action.*

APPEAL by defendant from an order at special term denying a motion to set aside the service of the summons herein.

The action was brought by George W. Barnett against the Chicago and Lake Huron Railroad Company, a foreign corporation created under the laws of Michigan, Indiana and Illinois. It was commenced by the issue of a summons and the service of the same upon the president of the defendant, in the city of New York, by delivering to and leaving with him a copy of said summons. Defendant moved to set aside the service on the ground that the court had no jurisdiction over the defendant, such defendant not having any property in the State of New York, or any offices or agencies in said State, and all its officers or agents residing in the States of Michigan and Indiana.

*Sinnott & Meyer,* for appellant. A corporation cannot migrate. It cannot be served personally outside of the State giving it existence, and the courts of this State cannot acquire jurisdiction of the person of a foreign corporation unless by voluntary appearance. *Whitehead* v. *Buff. & L. H. Ry. Co.,* 18 How. 218 ; *Brewster* v. *Mich. Cent. R. R. Co.,* 5 id. 183; *Howell* v. *Chicago & N. W. Ry. Co.,* 51 Barb. 378; *Bates* v. *N. O. J. & G. N. R. R. Co.,* 4 Abb. 72. To make a judgment valid it is necessary that the court rendering it should have jurisdiction of the subject-matter, and in addition thereto, either of the person or of the property

* See opinion of JAMES, J., in *O. & L. C. R. R. Co.* v. *V. & C. R. R. Co., post,* page , in which a different conclusion is reached.

of defendant. *Thompson* v. *Whitman*, 18 Wall. 457, and cases cited; *D'Arcy* v. *Ketchum*, 11 How. (U. S.) 165; *Knowles* v. *Gas Light and Coke Co.*, 19 Wall. 58.

*Sewell & Pierce,* for respondent.

Present—TAPPEN and GILBERT, JJ.

GILBERT, J. At common law jurisdiction over a foreign corporation could not be acquired by the service of process upon an officer thereof, outside of the State which gave it existence. In *M'Queen* v. *Middletown Manufacturing Co.*, 16 Johns. 5, the rule of the common law is thus stated by SPENCER, J.: "The process against a corporation must be served on its head or principal officer, within the jurisdiction of the sovereignty where this artificial body exists. If the president of a bank of another State were to come within this State he would not represent the corporation here; his functions and his character would not accompany him when he moves beyond the jurisdiction of the government under whose laws he derived this character." Consequently, the court, in that case, set aside an attachment, on the ground that a statute which authorized attachments against the estates of non-resident debtors generally did not apply to foreign corporations. The same principle has been decided in numerous cases. *Nash* v. *Rector, etc.*, 1 Miles, 78; *Dawson* v. *Campbell*, 2 id. 171; *Clarke* v. *N. J. S. Nav. Co.*, 1 Story, 531; *Lafayette Ins. Co.* v. *French*, 18 How. (U. S.) 404 ; *Peckham* v. *North Parish, etc.*, 16 Pick. 286.

It is, however, within the competency of the legislature to authorize suits against foreign corporations. The Revised Statutes gave such authority, and prescribed the manner in which it should be exercised. 2 R. S. 458, 459; Laws 1842, chap. 197. This proceeding, it is true, was substantially *in rem*. The judgment in it bound only the property of the corporation within this State, and it had no *extra* territorial force. I never heard the validity of this legislation called in question, and it was not disputed on the argument of this case. An attempt was made to show that, while the legislature had power to authorize a suit against a foreign corporation *in rem*, it has none to authorize one *in personam*. But no good reason for such a distinction was stated, or has ever been brought to my knowledge. If the legislature has power to authorize any suit, they may prescribe

Barnett v. Chicago and Lake Huron Railroad Co.

what kind, and the mode of procedure in it. There is nothing constitutional or fundamental in the method of procedure in an action. The legislature might have provided that the suit under the Revised Statutes might be commenced by summons, with publication of notice, and have directed that the property might be seized only after a judgment had been entered, and then by execution thereon, or the attachment might have been made a mere incidental remedy in the suit. In short, the mode and order of procedure might have been changed without changing the nature and effect of the judgment. The presence of property in the State was necessary to uphold the validity of the proceeding, only because the legislature had made it so.

The only question, therefore, is, whether the proceeding in this case is authorized by the Code. This court has held, on two occasions at least, that it is (*Prouty* v. *Mich. S., etc., R. R. Co.*, 4 N. Y. Sup. 230, and *Ives* v. *Memphis, El Paso & Pacific R. R. Co.*,* 4th department, April, 1874, not reported), and we think those decisions are correct. The successive amendments to the Code demonstrate the intention of the legislature on this subject very clearly. That statute, in 1849, authorized a suit against a foreign corporation by a resident of the State for *any cause of action*. Code, § 427. See, also, Laws 1849, chap. 107. Section 427 has never been changed. The Code of 1848 also enacted, that all actions should be commenced by summons (§ 127), and prescribed the mode of service on individuals and on corporations (§ 134); on the latter by delivering a copy to the president and secretary, etc. But by section 135 it was enacted that, "if *the person* on whom service is to be made cannot be found within the State," publication should be made, in cases against foreign corporations as well as non-resident individuals. The condition on which publication is required is in each case the same, namely, that *the person* to be served cannot be found within the State.

The same statute authorizes attachments to be issued against foreign corporations as well as individuals, but does not require an attachment to be issued as an element of jurisdiction. The attachment, however, can be issued only in an action (§ 227).

In 1851 section 134 of the Code was amended by the provision that the service should not be made on a foreign corporation unless

---

* This decision was made at a general term held by MULLIN, P. J., E. DARWIN SMITH and GILBERT, JJ., but no opinion was handed down.

it had property within the State, or the cause of action arose therein, and although section 135 was also amended at the same time, yet, when these facts existed, the mode of service on a foreign corporation was left the same as before. By the act of April 10, 1855, chap. 279, the legislature took another step in advance, and authorized service to be made on agents of foreign corporations, or persons who acted as such, when such corporations were doing business in this State. In 1859 a decisive amendment was made to section 134 of the Code by enacting that service may be made upon a foreign corporation, not only when it has property within this State, or the cause of action arose therein, but when such service shall be made within this State personally upon the president, secretary or treasurer thereof. There has been no change in the law, in respect to publication, since the amendment of 1859. The history of the legislation on this subject, therefore, demonstrates the intention of the law makers to have been to make service within the State on the proper officer of a foreign corporation equivalent to personal service on a non-resident natural person. If the non-resident individual, or the proper officer of the foreign corporation, is within the State, the mode of service is the same, and publication is not required in either case. If not in the State, and such service cannot be made, there must be publication in both cases, and jurisdiction is thereby acquired if either the individual or the corporation has property in the State, or the cause of action arose therein. So, too, the provisions of the Code in respect to the "provisional remedy" of attachment, and to the entering of judgment, apply alike to non-resident individuals and to foreign corporations. Not the slightest distinction is made between them.

What the effect of a judgment, recovered according to law, against a foreign corporation which has no property in this State, may be, it seems to me is an inquiry which has no bearing on the case. "It would operate on nothing in the State," as was said by Judge ROOSEVELT in *Cumberland Coal Co.* v. *Hoffman Coal Co.*, 30 Barb. 171; but I am not certain that "it would be regarded by nobody out of it." It is not necessary that a judgment should be universally binding to give it validity in the State where it was recovered. There is some reason for saying that such judgment ought to be universally binding. See *City Fire Ins. Co.* v. *Carrugi*, 41 Ga. 661, 670; Const. U. S., art. 4, § 1. A large number of foreign

corporations have, in fact, migrated into this State and established offices here. They make contracts here. Why should not these contracts be enforced here? If the corporation makes the contract by its officers, it ought to be amenable to the jurisdiction of the courts of the place where the contracts are made, and that can be accomplished only by allowing a service of process on its officers. It is only by such a service that jurisdiction of a corporation can be acquired anywhere, and if it can thus be acquired in one place, I am at a loss to perceive why it may not in any other.

Without adverting to the decisions on this subject, cited on behalf of the defendants, I will only repeat that I think the cases decided in the first and fourth departments, before cited, are sufficient authority for the conclusion that the order appealed from should be affirmed.

The order is affirmed, with $10 costs.

*Order affirmed.*